UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Thomas Eiriksson

    v.                                   Civil No. 05-cv-00235-PB
                                                                               Opinion No.  2006 DNH 111
Concrete Systems, Inc.
and Cleco Manufacturing

    v.

Connecticut Precast Corp.


MEMORANDUM AND ORDER

This product liability action arises from workplace injuries Thomas Eiriksson sustained while employed by third-party defendant Connecticut Precast Corporation ("Connecticut Precast").  Eiriksson was injured when a 4,000 pound concrete slab fell from a curing form and crushed his legs.  He sued the curing form's manufacturer, Cleco Manufacturing, Inc. ("Cleco Manufacturing"), and its parent corporation, Concrete Systems, Inc. ("CSI").  Cleco Manufacturing and CSI then filed a third-party action against Connecticut Precast pursuant to Fed. R. Civ. P. 14 seeking contribution and implied indemnification.

Connecticut Precast now moves to dismiss the third-party action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). In support of this motion, Connecticut Precast argues that it lacks sufficient contacts with the state of New Hampshire to be subject to the jurisdiction of this court. Cleco responds by arguing that the court has jurisdiction over Connecticut Precast pursuant to Fed. R. Civ. P. 4(k)(1)(B), which establishes specific personal jurisdiction rules for third-party defendants. Alternatively, it argues that the court has jurisdiction pursuant to Fed. R. Civ. P. 4(K)(1)(A) because Connecticut Precast once had an unrelated business contact with a New Hampshire customer. For the reasons set forth below, I find neither of Cleco's arguments persuasive. Thus, I grant Connecticut Precast's motion to dismiss.

## I.  BACKGROUND[1]

Thomas Eiriksson was injured on August 15, 2002 by a large cement structure as he was attempting to remove it from a curing

---

[1] The background facts included in this section are drawn from the parties' evidentiary submissions and are considered in the light most favorable to Cleco. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).

form at Connecticut Precast's place of business in Monroe, Connecticut.

Connecticut Precast is a Connecticut corporation with its only place of business located in Monroe, Connecticut. Connecticut Precast does not have any offices or employees in New Hampshire, nor does it own or lease any property in New Hampshire. It has had only one customer in New Hampshire during its years of operation. On its website, Connecticut Precast advertises its ability to serve customers in New York, Connecticut, and Massachusetts. However, Connecticut Precast had only one Massachusetts customer in 2004, which accounted for only 0.0048% of its revenue. During that year, 90% of its revenue came from the state of Connecticut and 10% came from New York.

CSI is a New Hampshire Corporation that has been located in Hudson, New Hampshire since 1989. Cleco Manufacturing was a Connecticut corporation that was originally based in Wallingford, Connecticut and was engaged in the business of manufacturing precast forms for the concrete industry. In 1985, the president and sole owner of CSI purchased Cleco Manufacturing. After the purchase, Cleco Manufacturing continued its manufacturing operations in Wallingford, Connecticut. Cleco Manufacturing

remained a Connecticut corporation until it was dissolved on December 27, 2001. On January 1, 2002, Cleco was merged into a division of CSI and its Wallingford, Connecticut operations moved to Hudson, New Hampshire. For purposes of organization in this order, I will refer to CSI and Cleco Manufacturing collectively as "Cleco."

## II.

### A. Standard Of Review

When a defendant contests personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of showing that a basis for asserting jurisdiction exists. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n., 142 F.3d 26, 34 (1st Cir. 1998). Because I have not held an evidentiary hearing, Cleco need only make a prima facie showing that the court has personal jurisdiction over Connecticut Precast. See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995)(citing United Elec., Radio, & Mach. Workers v. 163 Pleasant Street Corp., 987 F.2d 39, 43 (1st Cir. 1993).

To make a prima facie showing of jurisdiction, Cleco may not rest upon the pleadings. Rather, Cleco must "adduce evidence of specific facts" that support its jurisdictional claim. See

-4-

Foster-Miller, Inc., 46 F.3d at 145.  I take the facts offered by Cleco as true and construe them in the light most favorable to its claim.  See Mass. Sch. of Law, 142 F.3d at 34.

I do not act as a fact-finder when considering a plaintiff has made a prima facie showing of personal jurisdiction.  Rather, I determine "whether the facts duly proffered, [when] fully credited, support the exercise of personal jurisdiction." Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 84 (1st Cir. 1997).  While the prima facie standard is liberal, I need not "credit conclusory allegations or draw farfetched inferences." Mass. Sch. of Law, 142 F.3d at 34 (quotation omitted).  I also consider facts offered by the third-party defendant, but only to the extent that they are uncontradicted.  See id.

**B.   The Law Governing Personal Jurisdiction**

Federal Rule of Civil Procedure 4(k)(1)(A) provides that "[s]ervice of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located . . . ."  Thus, when assessing personal jurisdiction over a non-resident defendant in a diversity of citizenship case

such as this one, the federal court "'is the functional equivalent of a state court sitting in the forum state.'" Sawtelle, 70 F.3d at 1387 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).  Because New Hampshire's long-arm statute, N.H. Rev. Stat. Ann. § 293-A:15.10, authorizes jurisdiction to the full extent permitted by the federal Constitution, the sole inquiry is "whether the exercise of personal jurisdiction comports with federal constitutional standards."  Id. at 1388.

The Due Process Clause precludes a court from asserting jurisdiction over a defendant unless "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  The "constitutional touchstone" for personal jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  The inquiry into "minimum contacts" is necessarily fact-specific, "involving an individualized assessment and factual analysis of the precise mix of contacts that characterize

each case." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994). A defendant cannot be subjected to a forum state's jurisdiction based solely on "random," "fortuitous," or "attenuated" contacts. Burger King, 471 U.S. at 475 (quotations omitted). Rather, "'it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

A court may assert authority over a defendant by means of either general or specific jurisdiction. Mass. Sch. of Law, 142 F.3d at 34. "The standard for evaluating whether . . . contacts satisfy the constitutional general jurisdiction test 'is considerably more stringent' than that applied to specific jurisdiction questions." Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998) (quoting Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984)). A defendant who has engaged in continuous and systematic activity in a forum is subject to general jurisdiction in that forum with respect to all causes of action, even those unrelated to the defendant's forum-based activities. Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d

-7-

284, 288 (1st Cir. 1999).  In order to establish general jurisdiction, two criteria must be met: (1) "'continuous and systematic general business contacts'" must exist between the defendant and the forum; and (2) the exercise of jurisdiction must be reasonable as demonstrated by certain "gestalt factors." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)).

In contrast, a court may exercise specific jurisdiction only when the cause of action arises from, or relates to, the defendant's contacts with the forum.  Id.  The First Circuit divides the constitutional analysis of specific jurisdiction into three categories:  "relatedness, purposeful availment, and reasonableness." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 60 (1st Cir. 2002).  As to the first requirement, "[t]he evidence produced to support specific jurisdiction must show that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." Harlow v. Children's Hosp., 432 F.3d 50, 60-61 (1st Cir. 2005).  "[T]he defendant's in-state conduct must form an important, or at least material, element of proof in the

-8-

plaintiff's case." Id. at 61 (quotation and brackets omitted). With respect to the second requirement, "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Daynard, 290 F.3d at 61 (quoting Foster-Miller, 46 F.3d at 144). "The cornerstones upon which the concept of purposeful availment rests are voluntariness and foreseeability." Id. (quoting Sawtelle, 70 F.3d at 1391). Finally, the exercise of jurisdiction must be reasonable in light of certain "Gestalt factors." Id. at 62 (citing World-Wide Volkswagen Corp, 444 U.S. at 292 (listing factors) and quoting Foster-Miller, 46 F.3d at 144).

Personal jurisdiction may also be established in certain cases pursuant to Fed. R. Civ. P. 4(k)(1)(B), which provides: "[s]ervice of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant . . . who is a party joined under Rule 14 . . . and is served at a place within a judicial district of the United States and not more than 100 miles from the place from which the summons

issues . . . ." Although the First Circuit has not had occasion to interpret this rule, other circuit courts applying it have articulated due process requirements substantially similar to those discussed above with respect to long-arm jurisdiction. See, e.g., Sprow v. Hartford Ins. Co., 594 F.2d 412, 417 (5th Cir. 1979) (reasoning that a "meaningful nexus" with the bulge area or forum state is necessary for a finding of personal jurisdiction to satisfy Constitutional due process requirements). Thus, in order to establish a basis for personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(1)(B), a plaintiff must show that: (1) the defendant was served within the 100-mile "bulge area" surrounding the federal courthouse where the action was filed; and (2) the defendant has sufficient contacts with the "bulge area" or forum state to satisfy due process standards.

In the sections below, I first analyze Cleco's argument for personal jurisdiction pursuant to the "bulge" provision of Rule 4(k)(1)(B). I then discuss whether Connecticut Precast has sufficient contacts with New Hampshire to support a finding of personal jurisdiction based on Rule 4(k)(1)(A) and the New Hampshire long-arm statute.

### III.  **ANALYSIS**

Cleco's primary argument for a finding of personal jurisdiction is based on an erroneous interpretation of the "100-mile bulge" provision set forth in Fed. R. Civ. P. 4(k)(1)(B). Cleco does not claim that Connecticut Precast was "served at a place . . . not more than 100 miles" from the federal courthouse in Concord, New Hampshire.  Rather, it appears from the record that Connecticut Precast received the summons and complaint at its headquarters in Monroe, Connecticut. (Doc. No. 15-1).  Then, after receipt of the summons and complaint, Connecticut Precast executed a waiver of service. (Doc. No. 18).  Connecticut Precast's waiver of service does not subject it to jurisdiction of this court.  <u>See</u> Fed. R. Civ. P. 4(d)(1) ("A defendant who waives service of a summons does not thereby waive any objection to the . . . jurisdiction of the court over the person of the defendant.").  In any event, it is undisputed that Connecticut Precast's place of business in Monroe, Connecticut is located more than 100 miles from the federal courthouse in Concord. Thus, it is clear that Rule(4)(k)(1)(B) does not apply.

Cleco, however, takes the position that a federal court may obtain personal jurisdiction over a party pursuant to Rule

4(k)(1)(B) if the party simply has "minimum contacts" with the 100-mile "bulge area." (Doc. No. 29-1 at 6).  This position is supported neither by the text of Rule 4(k)(1)(B) nor by precedent.[2]  Moreover, even if Cleco had correctly interpreted Rule 4(k)(1)(B), it cannot succeed with this argument because it has not demonstrated that Connecticut Precast has maintained a "meaningful nexus" with the bulge area as courts applying the rule have required.  See, e.g., Sprow, 594 F.2d at 417.  With respect to this issue, the only evidence Cleco has offered of Connecticut Precast's contacts with the bulge area is the fact that Connecticut Precast's website advertises its availability to serve businesses throughout Massachusetts and that "there exist areas within Massachusetts that fall within a 100-mile radius of this court" (Doc. No. 29-1 at 6).  Cleco has made no showing of any actual business transactions within those areas of Massachusetts that  are encompassed by the "bulge area."  For

---

[2]  The United States Court of Appeals for the First Circuit has not considered this issue.  Moreover, the Second Circuit and Tenth Circuit cases cited by Cleco in support of this position both involved third-party defendants who were located and served within the bulge area.  See In re Rationis Enterprises, Inc. of Panama  261 F.3d 264, 266 (2d Cir. 2001); Quinones v. Pa. General Ins. Co., 804 F.2d 1167, 1178 (10th Cir. 1986).  Thus, these cases are distinguishable from the present case.  See id.

obvious reasons, this showing falls short of demonstrating either the "continuous and systematic general business contacts" or "meaningful nexus" necessary to establish jurisdiction over Connecticut Precast.  See Swiss Am. Bank, Ltd., 274 F.3d at 619; Sprow, 594 F.2d at 417.

With respect to whether personal jurisdiction is proper pursuant to Rule 4(k)(1)(A) and the New Hampshire long-arm statute, Cleco does not appear to contend that this court has specific personal jurisdiction over Connecticut Precast.[3]  Thus, I consider only whether Connecticut Precast has had sufficient New Hampshire contacts to confer general jurisdiction in this case.  In this regard, a single business transaction with a New Hampshire customer hardly amounts to the "continuous and systematic general business contacts" required to establish jurisdiction.  See Swiss Am. Bank, Ltd., 274 F.3d at 619.

---

[3]  In fact, the only evidence presented by Cleco of any contact Connecticut Precast has had with New Hampshire is Connecticut Precast's acknowledgment that it transacted business with a New Hampshire customer on one occasion. (Doc. No. 29-1 at 2).  Cleco does not assert that its claim against Connecticut Precast "arose directly out of, or is related to," this contact and therefore has not made a prima facie showing with respect to the first of the three requirements.  See Harlow, 432 F.3d at 60-61.  I thus conclude that this court does not have specific personal jurisdiction over Connecticut Precast.

Rather, Cleco has made a showing of only the "random," "fortuitous," or "attenuated" contacts described by the Supreme Court as insufficient to subject a defendant to personal jurisdiction in a forum. Burger King, 471 U.S. at 475 (quotations omitted). Thus, Cleco has failed to satisfy the first criterion set forth by the First Circuit, and there is no basis for general jurisdiction over Connecticut Precast. See Swiss Am. Bank, Ltd., 274 F.3d at 619.

## IV.   CONCLUSION

For the foregoing reasons, I grant Connecticut Precast's motion to dismiss for lack of personal jurisdiction (Doc. No. 23).

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

September 28, 2006

cc:   John P. Fagan, Esq.
      Dona Feeney, Esq.
      Cheryl Hieber, Esq.
      Erik H. Langeland, Esq.
      Robert A. Stein, Esq.